**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

PROVIDENCE FINANCIAL                     Case No.:  16-bk-20516-AJC
INVESTMENTS, INC.,                                    Chapter 7
PROVIDENCE FIXED INCOME                  Case No.:  16-bk-20517-AJC
FUND, LLC,                                           Chapter 7

       Debtors.                          (Jointly Administered under Case No.:
_____/          16-bk-20516-AJC)

MARIA YIP, as Trustee of Providence      **Adv. Pro. No.:  18-ap-01289-AJC**
Financial Investments, Inc. and Providence
Fixed Income Fund, LLC,

       Plaintiff,

v.

GRANT THORNTON LLP, CADWALADER
WICKERSHAM & TAFT LLP, & GREENE
ESPEL PLLP,

       Defendants.
_____/

<u>**MOTION TO WITHDRAW THE REFERENCE BY**</u>
<u>**DEFENDANT CADWALADER, WICKERSHAM & TAFT LLP**</u>

Defendant Cadwalader, Wickersham & Taft LLP ("Cadwalader"), by and through its

undersigned counsel, and pursuant to Local Rule 5011-1, Federal Rule of Bankruptcy Procedure

5011, 28 U.S.C. § 157(d) for the Southern District of Florida, and Paragraph 1 of the Bankruptcy

Court's Order Setting Filing and Disclosure Requirements for Pretrial and Trial (the "Scheduling

Order") [ECF No. 3] (as amended by the Court's Order on Joint Motion to Continue Pretrial

Conference and Extend All Pretrial Deadlines [ECF No. 51], files this Motion to Withdraw the

Reference (the "Motion"), and states as follows:

## Background

This adversary proceeding ("Adversary Proceeding") was filed by the Plaintiff, Maria Yip, as Chapter 7 Trustee ("Plaintiff" or "Trustee") for the bankruptcy estates of Providence Financial Investments, Inc. ("Providence Financial") and Providence Fixed Income Fund, LLC ("Providence Fund" and, together with Providence Financial, the "Debtors") against Defendants, Cadwalader, Grant Thornton ("GT"), and Greene Espel, PLLP ("GE" and, together with Cadwalader and GT, the "Defendants") relating to pre-petition professional services that Defendants provided to Debtors, as explained in more detail below.

## I.      The Chapter 7 Cases

On July 28, 2016, the Debtors filed separate petitions under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing cases 16-bk-20516-ACC and 16-bk-20517-ACC, respectively (collectively, the "Chapter 7 Cases").   On the same day, Plaintiff Maria Yip was appointed as Chapter 7 Trustee in both Chapter 7 Cases.  On September 2, 2016, the Bankruptcy Court ordered that the Chapter 7 Cases be jointly administered under lead case *In re Providence Financial Investments, Inc.*, Case No. 16-bk-20516-ACC, pending in the Bankruptcy Court (the "Main Case").

On April 16, 2018, Plaintiff, in her capacity as Trustee, filed a Motion for Substantive Consolidation seeking to substantively consolidate multiple Debtor affiliates, including but not limited to, Providence Global Ltd. ("PGL") and Providence Investment Management International Limited ("PIMIL") [Main Case ECF No. 153].  Shortly thereafter, however, the Joint Liquidators for PGL and the Joint Administration Managers for PIMIL filed appearances in the Main Case, and they provided notice of their objection to the Trustee's Motion for Substantive Consolidation and requested the entry of a scheduling order for an evidentiary

hearing with briefing deadlines [Main Case ECF Nos. 182, 188].  In response, the Court entered agreed orders setting briefing deadlines and scheduling a final hearing. Prior to the deadline to submit briefs, on June 26, 2018, Plaintiff filed a Notice of Withdrawing her Motion for Substantive Consolidation.  [Main Case ECF No. 210].  Accordingly, the only Debtors in this action remain Providence Financial and Providence Fund.

## II.    This Adversary Proceeding and Interconnected Nature of the Trustee's Claims Against Cadwalader

On August 21, 2018, Plaintiff filed a nine-count amended complaint [ECF No. 7] ("Complaint") against Grant Thornton, LLP ("GT"), Cadwalader, and Greene Espel PLLP ("GE" and, together with GT and Cadwalader, the "Defendants").  Only three of the nine counts are asserted against Cadwalader:

- Count I (Aiding and Abetting Fraud) (the "Aiding and Abetting Claim");

- Count VIII (Turnover – 11 U.S.C. § 542) (the "Turnover Claim"); and

- Count IX (Action for Equitable Accounting) (the "Accounting Claim" and, together with the Aiding and Abetting Claim and the Turnover Claim, the "Claims").

The Claims are asserted jointly by both Debtors, and the conduct on which all three claims are based arise out of legal services provided by Cadwalader pursuant to an engagement letter dated as of February 1, 2016 ("Engagement Letter"),[1] wherein Providence Financial and Providence Global, Inc. retained Cadwalader "in connection with responding to a civil subpoena issued to the Providence Companies[2] ("Subpoena") by the U.S. Securities and Exchange

---

[1] The Complaint speaks of two other prior engagements with Cadwalader.  But as the allegations make clear – the engagements were with other non-debtor entities.  Am. Compl. at ¶¶ 57 & 58.  In addition, the engagement letters for those engagements also contain valid and enforceable arbitration clauses.

[2] The SEC Subpoena defines "Providence" as "Providence Global, Inc. and all members of the Providence Family of Companies identified on the Providence Financial website at http://provfinance.com/about-providence including, but not limited to Providence Financial Investments, Inc., the Providence Companies, Providence Companies Group, Providence Preferred, Providence Trading, Providence Finance & International Trade, Providence Investment Management International Limited, Providence Financial, Providence Entertainment & Media, Providence Capital

Commission [("SEC")]."  *See* Engagement Letter at 1.  A true and correct copy of the Engagement Letter is attached hereto as **Exhibit "A."**  Notably, the SEC Subpoena was issued to the Providence Companies less than five months before the SEC filed its complaint against the Debtors.  A true and correct copy of the SEC Subpoena is attached hereto as **Exhibit "B."**  The Engagement was executed by Antonio Buzaneli ("Buzaneli"), the owner, chief executive officer and co-founder of the "Providence Entities."[3]

In her Complaint, Plaintiff, on behalf of both Providence Financial and Providence Fund, alleges[4] that the Debtors' principal, Buzaneli, made materially false representations to investors pursuant to a *Ponzi* scheme and that the Defendants "knowingly provided substantial assistance to Buzaneli in executing and concealing the *Ponzi* scheme and defrauding investors when they learned of the fraud but purposefully concealed the fraud from the SEC."  *See* Am. Compl. at ¶ 91.  Plaintiff further alleges that the Defendants were not only aware of their role in the *Ponzi* scheme, but "acted knowingly in assisting Buzaneli" and benefited from their participation by earning "income from professional, accounting, and/or legal fees from the Providence Entities." *Id.* at ¶ 99.

Providence Fund's claims arise out of and are intertwined with Cadwalader's provision of legal services to, among other Providence Entities, Providence Financial.  Indeed, but for Cadwalader's provision of legal services, Cadwalader would have never had reason to communicate or interact with Buzaneli, the Debtors, or any of the Providence Entities.  In the

---

Ventures LLC, Providence Health Corp, Providence Realty Advisors, Providence Fomento, and Providence Travel and including their parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing."  Subpoena at Rider 1.

[3] As defined in the Complaint, "Providence Entities" means "the Debtors, along with affiliates located in the United States, London, Hong Kong, Taipei, Shanghai, Suzhou, Singapore, Cayman Islands, Brazil, Guernsey, Canada, Istanbul, Dubai, Panama, and Puerto Rico . . . ."  *See* Am. Compl. at ¶ 23.

[4] Cadwalader disputes the allegations asserted in the Complaint as against Cadwalader and reserves its rights to address such allegations at the appropriate time.

Complaint, the Trustee attributes two purported "acts" to Cadwalader to support her Aiding and Abetting Claim.  First, the Trustee alleges that Cadwalader, during the course of its representation and in responding to the SEC Subpoena, Cadwalader assisted Buzaneli in concealing his fraudulent activities from the SEC by purportedly "misrepresenting and concealing material facts from the SEC" during the presentation to the SEC.  *Id.* at ¶¶ 85, 96. Second, Plaintiff alleges that Cadwalader's purported prior representation of two non-debtor foreign affiliates[5] constituted "substantial assistance to Buzaneli in executing and concealing the Ponzi scheme and defrauding investors when [Cadwalader] learned of the fraud or was willfully blind to the fraud and continued to represent and provide legal advice and assistance to the Providence Entities." *Id.* at ¶ 97.

The entire basis of Providence Fund's Aiding and Abetting Claim against Cadwalader is that Cadwalader owed a duty to the Providence Entities (a term the Trustee uses throughout her Amended Complaint to lump together all the Providence companies regardless of their affiliation or connection with the SEC subpoena or Cadwalader's legal representation) to disclose the fraud to the SEC and to not let Buzaneli, the companies' principal, continue to use the Providence Entities to perpetrate a fraud.  Thus, Providence Fund's Claims rely on Cadwalader's fiduciary relationship with its clients (arising from Cadwalader's engagement for legal services) to assert that a duty flows from that relationship in favor of *both* Debtors, including Providence Fund, and the Complaint attempts to allege the substantial-assistance element of the Aiding and Abetting Claim because Cadwalader "continued to represent and provide legal advice and assistance to the Providence Entities." *Id.* at ¶ 97.[6]

---

[5] The engagement letters with those non-debtor foreign affiliates also contain valid and enforceable arbitration clauses.

[6] In her Response to Cadwalader's Expedited Motion for Stay Pending Appeal of Order Denying Motion to Compel Arbitration [S.D. Fla. Case No. 18-cv-24253 ECF No. 8] ("Response"), the Trustee disputes that the basis of her

Further, regarding the Turnover Claim, and as discussed in more detail *infra*, the Bankruptcy Court found that "the 'true substance' of the Turnover Claim appear[ed] to be an extension of the Plaintiff's Aiding and Abetting Claim and/or a breach of contract claim. *Yip v. Grant Thornton, et al.* (*In re Providence Fin. Inv., Inc., et al.*), No. 18-1289-BKC-AJC-A, 2018 WL 4944840, at *6 (Bankr. S.D. Fla. Oct. 9, 2018).

## III.     Cadwalader's Motion to Compel Arbitration and Stay Proceedings

Cadwalader moved to compel arbitration of all Claims asserted against it pursuant to an arbitration provision contained in the Engagement Letter.[7]  *See* Ex. "A."  While the Engagement Letter was executed by Debtor, Providence Financial, and non-debtor, Providence Global, Inc., Cadwalader filed its Motion to Compel Arbitration, seeking arbitration of all Claims asserted against it by the Trustee on behalf of both Debtors, as the Claims arise out of and are related solely to Cadwalader's provision of legal services made pursuant to the Engagement Letter.  *Id.* at 2, 5, 15, and 16.  Simultaneously with the Motion to Compel Arbitration, Cadwalader also filed a separate expedited motion for stay pending adjudication of the Motion to Compel Arbitration.  *See* Expedited Motion to Stay Proceedings Pending Adjudication of Motion to Compel Arbitration, ECF No. 11. After reviewing the parties' submissions and hearing oral argument, the Court granted Cadwalader's Motion to Compel Arbitration as to the Claims

---

Aiding and Abetting Claim is that Cadwalader owed a duty to the Providence Entities because, *inter alia*, "the words 'duty' and 'duties' appear only twice" in the Complaint.  Response at 22.  As noted *infra*, "'[t]he label a party attaches to a claim does not require the court to wear blinders as to the claim's true substance.'"  *Carn v. Wall & Assoc., Inc.* (*In re Tomberlin*), 2017 WL 410337, Adv. Pro. 16-01115, at *3 (Bankr. M.D. Ala. Jan. 30, 2017) (*quoting In re Harrelson,* 537 B.R. 16, 24 (Bankr. M.D. Ala. 2015).  Similarly, use (or avoidance of) a specific word or phrase does not change the true substance of the Trustee's Aiding and Abetting Claim.

[7] A section of the Engagement Letter entitled "Resolution of Disputes – Mediation and Arbitration" ("Arbitration Provision") provides that "any dispute arising out of or relating to [Cadwalader's] rendering professional services to you or [Cadwalader's] fees, disbursements, and charges will first be submitted to private, non-binding mediation . . . ."  Engagement Letter at 5.  "If resolution through mediation is not achieved, any such dispute will be finally resolved by private, confidential binding arbitration . . . [which] will be conducted in New York City . . . ."  *Id.* "Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation or enforceability of any of these procedures shall be governed by the Federal Arbitration Act and resolved by the arbitrators."  *Id.*

brought by Providence Financial, but denied the motion as to the Claims brought by Providence Fund.  *See* Order Granting in Part Motion to Compel Arbitration and Stay Pending Adversary Proceeding ("Order"),[8] ECF No. 55.

On October 15, 2018, Cadwalader filed its Expedited Motion for Stay Pending Appeal of the Order [ECF No. 57], Motion for Leave to Appeal the Order [ECF No. 58], and Notice of Appeal of the Order [ECF No. 59].  The pending appeal has been assigned Case No. 18-cv-24253-UU, pending in the United States District Court for the Southern District of Florida, before the Honorable Ursula Ungaro (the "Appeal").

**Argument**

## I.   Preliminary Statement

On October 19, 2018, the Bankruptcy Court entered its Order Granting in Part Expedited Motion for Stay Pending Appeal, whereby it stayed all pending deadlines and prosecution of the adversary proceeding for ten (10) days through and including October 29, 2018.  [ECF No. 66].  In response, Cadwalader immediately filed with the District Court its updated Expedited Motion for Stay Pending Appeal of the Order, requesting expedited relief on or before October 29, 2018 ("District Court Motion for Stay").  [Appeal ECF No. 6].  As of the date of this filing, the District Court has not yet ruled on the District Court Motion for Stay, necessitating the filing of a Motion to Dismiss the Amended Complaint in the Adversary Proceeding ("Motion to Dismiss")[9] to counter any efforts by the Trustee to default Cadwalader.

In addition, Cadwalader is filing the instant Motion in an abundance of caution, in order to avoid any future assertion by the Trustee that a later filed Motion (only in the unlikely event

---

[8] The Order has been assigned a Westlaw citation:  *Yip v. Grant Thornton, et al.* (*In re Providence Fin. Inv., Inc., et al.*), No. 18-1289-BKC-AJC-A, 2018 WL 4944840 (Bankr. S.D. Fla. Oct. 9, 2018).  The Order is cited in this Motion using the Westlaw citation format.
[9] The Motion to Dismiss is being filed contemporaneously with this Motion.

that its Appeal is unsuccessful), is somehow untimely.  For the avoidance of doubt, Cadwalader is amenable to staying any adjudication of the instant Motion pending a final adjudication of the Appeal.  Furthermore, nothing contained herein should be construed as an indication by Cadwalader that any of the Trustee's Claims against Cadwalader should not be subject to arbitration.

## II.      The Legal Basis for Discretionary Withdrawal of the Reference

The United States District Courts have original and exclusive jurisdiction of all cases under title 11, and have original but not exclusive jurisdiction of all civil proceedings arising under title 11, arising in, or related to cases under title 11.  *See* 28 U.S.C. §§ 1334(a) & (b). Accordingly, on March 27, 2012, then-Chief Judge Federico A. Moreno of the United States District Court for the Southern District of Florida (the "District Court"), issued Administrative Order 2012-25, titled Order of Reference (the "Administrative Order"),[10] referring all cases or proceedings arising under title 11 or arising in or related to a case under Title 11 to the bankruptcy judges of this district.  The reference was limited to the extent that "a bankruptcy judge or district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the United States Constitution in a particular proceeding" referred under the Administrative Order and determined to be a core matter in which case "the bankruptcy judge shall, unless otherwise ordered by the district court, hear the proceeding and submit proposed findings of fact and conclusions of law to the district court."  *Id.*

"Once a bankruptcy proceeding has been 'referred to the bankruptcy court, the district court's authority to withdraw the reference is governed by 28 U.S.C. § 157.'"  *Feltman, et al. v. Rosenbert, Rich, Baker, Berman, & Co., et al.* (*In re Certified HR Serv. Co.*), No. 07-61169-civ-zloch, 2008 WL 9424996, at *2 (S.D. Fla. May 30, 2008) (citation omitted).  The relevant

---

[10] A true and correct copy of the Administrative Order is attached hereto as **Exhibit "C."**

section of 28 U.S.C. § 157 states that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  28 U.S.C. § 157(d).

While "there are two forms of withdrawal:  mandatory and permissive," "[t]he decision of whether to grant the permissive withdrawal of a bankruptcy Reference is committed to the sound discretion of the district courts, and is only done 'for cause.'"  *Feltman*, 2008 WL 9424996, at *2 (*citing Parklane Hosiery Co., Inc. v. Parklane/Atlanta Venture* (*In re Parklane/Atlanta Joint Venture*), 927 F.2d 532, 538 (11th Cir. 1991)).

"The following factors are considered to determine sufficient cause: 1) the advancement of uniformity in bankruptcy administration; (2) decreasing forum shopping and confusion; (3) promoting the economical use of the parties' resources; (4) facilitating the bankruptcy process; (5) whether the claim is core or non-core; (6) efficient use of judicial resources; (7) a jury demand and (8) prevention of delay."  *Frank v. Lake Worth Util.*, No. 11-80734-civ, 2011 WL 2600687, at *1 (S.D. Fla. June 30, 2011) (*citing i.e., Dionne v. Simmons* (*In re Simmons*), 200 F.3d 738, 742 (11th Cir. 2000)).  "Nevertheless, the cause prerequisite should not be used to prevent the district court from properly withdrawing reference either to ensure that the judicial power of the United States is exercised by an Article III court or in order to fulfill its supervisory function over the bankruptcy courts . . . ."  *Parklane Hosiery Co.,* 927 F.2d at 538.

For the reasons stated below, and subject to Cadwalader's Preliminary Statement, the Court should withdraw the reference as to Providence Fund's Claims against Cadwalader with respect to jury trial and rulings on any dispositive motions, including requiring the bankruptcy judge to submit proposed findings of fact and conclusions of law.

### III.     If Ordered to Answer, Cadwalader Shall Demand a Jury Trial as to Providence Fund's Claims Against Cadwalader

A named defendant in a trustee's avoidance action that has not filed a proof of claim against the bankruptcy estate does not lose its right to a jury trial with respect to legal causes of action. *Granfinanciera v. Nordberg* (*In re Gen. Coffee Corp.*), 492 U.S. 33, 64 (1989); *see also Stein v. Miller*, 158 B.R. 876, 880 (S.D. Fla. 1993).  And while the District Court has designated bankruptcy judges to conduct jury trials, they may only do so "*with the express consent of all parties . . . .*"  S.D. Fla. Local Rule 87.5 (emphasis added).

Cadwalader has not filed a proof of claim in the Main Case, does <u>not</u> consent to a jury trial in the bankruptcy court of any portion of Providence Fund's Claims, and if ordered to answer the Complaint, Cadwalader fully intends to demand a jury trial on all of Providence Fund's Claims in the District Court.  Further, Cadwalader has the right to a jury trial on all of Providence Fund's Claims.

The inability of a bankruptcy judge to conduct a jury trial as to the Providence Fund's Claims constitutes sufficient cause for withdrawal of the reference for purposes of conducting a jury trial in the District Court on Providence Fund's Claims.  *See Stettin v. TD Bank* (*In re Rothstein, Rosenfeldt, Adler, P.A.*), No. 11-62172-civ, 2012 WL 827124, at *5 (S.D. Fla. Mar. 9, 2012) (withdrawing the reference for purposes of a jury trial, if and when the matter is ready for trial, and noting that defendant's right to a jury trial for all issues so triable precludes the bankruptcy court from trying any issues as to the defendant); *Mukamal v. ABN AMRO Fund Serv. Bank, et al.* (*In re Palm Beach Fin. Partners, L.P.*), No. 13-80102, 2013 WL 2036161, at *2 (S.D. Fla. May 14, 2013) (withdrawing the reference for the purposes of a jury trial); *Feltman*, 2008 WL 9424996, at *4 (same).

"A party's right to a jury trial centers on whether either the Seventh Amendment, federal

statute, or state constitutional guarantee provides for one . . . ."  *Feltman*, 2008 WL 9424996 at *3.  "The Seventh Amendment gives parties the right to a jury trial for all suits at common law." *Id.*  As the Trustee acknowledges in her Response to Cadwalader's Motion to Compel Arbitration [ECF No. 22], the Aiding and Abetting Claim alleges a tort claim.  Response to Motion to Compel at 8.  Since "[t]he essence of such an action is in tort, [it] presents a suit recognized at common law in 1789."  *Feltman*, 2008 WL 9424996 at *3.  Further, courts in this district have acknowledged the right to a jury trial on a claim for aiding and abetting fraud.  *See Coquina Inv. v. Rothstein*, No. 10-60786-civ, 2012 WL 4479057, at *2 (S.D. Fla. Sept. 28, 2012) (noting that a *jury* returned a verdict on an aiding and abetting fraud claim); *Tew v. Chase Manhattan Bank, N.A.*, 728 F. Supp. 1551, 1568-69 (S.D. Fla. 1990) (explaining that there remained issues of fact on an aiding and abetting fraud claim such that the issues were to be submitted to a *jury*).

Likewise, although the Accounting Claim is labeled an "Action for Equitable Accounting" in the Trustee's Complaint, the mere fact that the Accounting Claim may be equitable in nature does not destroy Cadwalader's right to a trial by jury on that claim.  "An action for accounting was formerly cognizable, both at law and in equity."  *Sodikoff v. Allen Parker Co.*, 202 So. 2d 4, 6 (Fla. 3d DCA 1967).  "The basis for the equity jurisdiction in accounting matters was the complexity of the issues and the fact that there were often numerous issues which made the use of a common law jury impracticable."  *Id.*  However, "[i]t is not sufficient to deny to the parties the constitutional right to a trial by jury merely because a case is complicated or because questions of addition, subtraction and other mathematical problems arise which require elementary accounting on the part of the jury to arrive at a verdict."  *Martel & Sons, Inc. v. Friedman*, 461 So. 2d 1023, 1024 (Fla. 4th DCA 1985) (*quoting Rizzo v. Euclid*

*Urbana Co.,* 118 So. 2d 553, 554-55 (Fla. 2d DCA 1960)).

In her Complaint, Trustee requests that the Bankruptcy Court "require Defendants to provide an accounting of all transfers of the funds Defendants received from Debtors or any of the Providence Entities." *See* Am. Compl. at 31. However, there is nothing about this request that would require anything other than addition, subtraction, or other elementary accounting on the part of the jury. The Trustee is simply asking the Defendants to provide to her a list of transfers received from the Debtors and/or Providence Entities, and as such, the requested relief is well within the purview of a jury.

Finally, as to the Turnover Claim and as noted above, the Bankruptcy Court has already found that "the 'true substance' of the Turnover Claim appears to be an extension of the Plaintiff's Aiding and Abetting Claim and/or breach of contract claim." *Yip v. Grant Thornton, et al.* (*In re Providence Fin. Inv., Inc., et al.*), No. 18-1289-BKC-AJC-A, 2018 WL 4944840, at *6 (Bankr. S.D. Fla. Oct. 9, 2018). Indeed, "'[t]he label a party attaches to a claim does not require the court to wear blinders as to the claim's true substance.'" *Carn v. Wall & Assoc., Inc.* (*In re Tomberlin*), 2017 WL 410337, Adv. Pro. 16-01115, at *3 (Bankr. M.D. Ala. Jan. 30, 2017) (*quoting In re Harrelson,* 537 B.R. 16, 24 (Bankr. M.D. Ala. 2015)). Accordingly, because "the Turnover Claim appears 'directly connected to the facts undergirding' the Aiding and Abetting Claim, and the Aiding and Abetting Claim will 'rise and fall together' with the Turnover Claim," Cadwalader is entitled to a jury trial on the Turnover Claim as it is nothing more than an extension of the Aiding and Abetting Claim.

## IV.     The Non-Core Nature of the Claims Warrant Withdrawal of the Reference

Neither Cadwalader nor the Trustee[11] consent to the entry of final orders and judgments by the bankruptcy court with respect to non-core proceedings and/or if the bankruptcy court

---

[11] *See* Am. Compl. at 4 n.1.

lacks the constitutional authority to enter final judgment on any of the Claims asserted.

"Not all matters referred to the bankruptcy court are subject to entry of final orders or judgments in the bankruptcy court." *British Am. Isle of Venice (BVI) Ltd. et al. v. Fullerton, et al.* (*In re British Am. Ins. Co. Ltd.*), Nos. 11-3117 & 11-3118, 2013 WL 211336, at *1 (Bankr. S.D. Fla. Jan. 18, 2013).   Once referred, "the bankruptcy court has the statutory power to enter final orders and judgments in title 11 cases and in 'core' matters 'arising under' or 'arising in' cases under title 11."   *Id.*   However, "[w]ith regard to non-core proceedings, the bankruptcy court may hear such proceedings, but absent consent of the parties, must then submit proposed findings of fact and conclusions of law to the district court. *Id.* (*citing* 28 U.S.C. § 157(c)).[12]  "If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law." *Executive Benefits*, 134 S. Ct. at 2172.

Typically, "[w]hether a matter is core or non-core is a determination that should first be made by the Bankruptcy Court." *Scharrer, et al. v. Quintairos, Prieto, Wood & Boyer, P.A., et al.* (*In re Fundamental Long Term Care, Inc.*), No. 14-cv-1377-T-17, 2014 WL 2882522, at *2 (M.D. Fla. June 25, 2014).

In this case, the Bankruptcy Court has already made such a determination, concluding that "the Aiding and Abetting Claim and the Accounting Claim constitute non-core claims . . . ." *Yip,* 2018 WL 4944840 at *5.   As for the Turnover Claim, while the Bankruptcy Court did not state outright that it was a non-core claim, it did conclude that "the 'true substance' of the Turnover Claim appears to be an extension of the . . . Aiding and Abetting Claim and/or a breach

---

[12] Indeed, the United States Supreme Court's decision in *Stern v. Marshall,* 564 U.S. 462 (2011) acknowledged that "there are limits on the power of Congress to direct what matters may be subject to final orders and judgments in the bankruptcy." *Id.* at *2.  However, as the United States Supreme Court later confirmed in *Executive Benefits Ins. v. Arkison*, *Stern* simply "made clear that some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy court in the manner designated by § 157(b)."  134 S. Ct. 2165, 2172 (2014).

of contract claim." *Id.* at *6. However, the allegations in the Complaint, together with papers previously filed by Cadwalader, make it clear that the Turnover Claim is a non-core action.

In her Complaint, the Trustee alleges, without more, that "Defendants retain property of the Debtors, . . . including retainer funds being held by Defendants." Am. Compl. at ¶ 153. The Trustee further alleges that she is "entitled to the immediate turnover of any and all funds held by Defendants that were received from the Debtors or the Providence Entities, or their value." *Id.* at ¶ 154. First and foremost, Cadwalader has filed an affidavit in the Adversary Proceeding stating that it "never received any fee retainers or payments of attorneys' fees from either of the Debtors." Motion to Compel Arbitration, Exhibit "B" ("Affidavit"). A true and correct copy of the Affidavit is attached hereto as **Exhibit "D."** With that background in mind, and perhaps recognizing that Cadwalader holds no property of the Debtor, the Trustee not only fails to identify *which* Defendant has possession, custody, or control of a particular piece of property, the Trustee also fails to identify *what* property she may use pursuant to § 363. Lastly, the Trustee fails to state whether the unidentified property has any value or benefit to the estate.[13]

Indeed, from the allegations in the Complaint, the *only* plausible scenario in which Cadwalader would have received or be holding any of the Debtors' property would be pursuant to the terms of the Engagement Letter under which Providence Financial engaged Cadwalader to provide pre-petition services to it.[14] The engagement was an arms' length transaction for which Providence Financial was obligated to pay Cadwalader for services rendered. Just because Providence Financial paid Cadwalader for its services, without more, it does not follow that Cadwalader retains property of the Debtors – and as stated above, the Trustee points to no such

---

[13] Section 542(a) states, *inter alia*, that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

[14] Cadwalader suggests this scenario for illustrative purposes only.

property in Cadwalader's possession, custody, or control.   The Trustee merely alleges that Defendants retain property of the Debtors "[u]pon information and belief . . . ."  *Id.*

At most, it appears that the Trustee is trying to recover from Cadwalader some debt that the Trustee believes that it owes to the Debtors.[15]   However, the Complaint is devoid of any factual allegations to support a finding that debts between Cadwalader and the Debtors are undisputed, let alone a finding that any debts between the two parties even exist.

The Eleventh Circuit has confirmed that "[t]urnover proceedings are not to be used to liquidate *disputed contract claims*."  *Charter Crude Oil Co.* v. *Exxon Co, U.S.A.* (*In re Charter Co, et al.*), 913 F.2d 1575, 1579 (11ᵗʰ Cir. 1990) (emphasis added).   "Clearly, Congress envisioned the turnover provision of § 542 . . . to apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand."  *Id.*   Importantly, "Congress intended to ease reorganization by allowing the debtor to obtain funds immediately necessary for survival – not all funds, *only those not in dispute*."  *Id.* (emphasis added).

As the Bankruptcy Court has already recognized, "'[c]ourts in the Eleventh Circuit generally follow the majority rule that a debt must be *<u>undisputed</u>* to be subject to turnover.'" *Yip,* 2018 WL 4944840, at *6 (emphasis added) (*quoting Pettie v. Ringo and Shechem Indus., Inc.* (*In re White*), 555 B.R. 883, 888 (Bankr. N.D. Ga. 2016)).   It is improper to use the Bankruptcy Code's turnover provisions to "allow the debtor to recover monies under the Bankruptcy Code from disputed claims based strictly on state law."  *Ven-Mar of Indian River, Inc. v. Hancock* (*In re Ven-Mar Int'l, et al.*), 166 B.R. 191, 192 (1994).   "'Certainly such procedure could not be sanctioned outside bankruptcy and there is no just reason why it should be sanctioned just because the entity seeking to collect disputed funds happens to be a [d]ebtor

---

[15] Section 542(b) states, *inter alia*, that an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."

under the Bankruptcy Code.'" *Id.* (*quoting Chick Smith Ford, Inc. v. Ford Motor Co.* (*In re Chick Smith Ford, Inc.*), 46 B.R. 515, 518 (Bankr. M.D. Fla. 1985)).

In *Ven-Mar*, the plaintiff/debtor filed a complaint alleging that defendants owed plaintiff funds on account of an irrigation system installed on defendants' property and sought turnover of the same. *Id.* at 192. Because the debt was disputed, the *Ven-Mar* Court found it clear that the "turnover action," despite being labeled as such, was non-core. *Id.* at 193. In short, it could not be "properly characterized as a 'turnover action'" because it was seeking money that was "not property *of* the Debtor[,] but may be property owed to the Debtor . . . ." *Id.* (emphasis in original). Indeed, "Section 542 does not provide trustees and debtor in possession with the ability to recover property where a dispute exists between the parties . . . [but instead] allows trustees and debtors in possession to recover property that is *clearly property of the debtor.*" *Id.* (emphasis added).

As in *Ven-Mar*, the Trustee's allegations, together with Cadwalader's affidavit, make it clear that the Turnover Claim is, at most, seeking money that is not property *of* the Debtors, but instead *owed to* the Debtors.[16] Accordingly, all of the Claims are non-core claims. And, because neither Cadwalader nor the Trustee[17] consent to the entry of final orders and judgments by the bankruptcy court, the Bankruptcy Court must submit proposed findings of fact and conclusions of law to the District Court as to Providence Fund's Claims against Cadwalader. *See* 28 U.S.C. § 157(c).

### V. Considerations of Judicial Economy, Promoting the Economical Use of the Parties' Resources, and Prevention of Delay Warrant Withdrawal of the Reference

"[Q]uestions of efficiency and uniformity will turn" on whether a claim that is the subject

---

[16] Again, Cadwalader disputes that it owes any money to the Debtors, but for the purposes of this Motion, makes such statements to illustrate why the Turnover Claim is indeed a non-core claim.
[17] *See* Am. Compl. at 4 n.1.

of a motion to withdraw the reference is core or non-core. *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1101 (2d Cir. 1993). "For example, the fact that a bankruptcy court's determination on non-core matter is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court." *Id.*; *see also BVI*, 2013 WL 211336, at *2 ("Proposed findings of fact and conclusions of law submitted by the bankruptcy court, in non-core matters . . . are subject to *de novo* review by the district court.").

Without withdrawal, "[t]his creates a two-step process that, if resolved in the district court in the first instance, would be reduced to a one-step process." *Feltman*, 2008 WL 9424996, at *3 (noting that "the Court can by withdrawing the reference and putting everything into one proceeding . . . combine all findings and evidence presented that need to be made [under some counts] with the Jury findings that will be with [the remaining counts]" and accordingly, "[t]his single proceeding by the Court will conserve both its and the Parties' resources."). Such should be the result here. Although the Adversary Proceeding was filed on July 26, 2018, the Trustee did not file her Complaint until August 21, 2018. No discovery has occurred, motion practice has been limited to matters associated with Cadwalader's Motion to Compel Arbitration, and Cadwalader responded to the Complaint by filing its Motion to Dismiss contemporaneously with the filing of this Motion. Indeed, by withdrawing the reference at this early juncture in the underlying adversary proceeding, the District Court will not only be able to conserve the bankruptcy court's limited judicial resources, the District Court will also help to conserve the parties' resources and prevent possible delay by obviating the need for a "two-step" review process that would follow should the bankruptcy court be required to issue proposed findings of fact and conclusions of law as to the non-core Providence Fund Claims against Cadwalader. .

*See E3 Biofuels-Mead, LLC v. Zurich Am. Ins. Co.,* No. 08-214-CM, 2009 WL 274477, at *1 (D. Kan. Jan. 26, 2009) ("By transferring this matter to the district court at the initial stage of the litigation, the court and the parties will save time and other resources and avoid an extra judicial step.").

Alternatively, if the District Court is not inclined to withdraw the reference in its entirety, it may withdraw the reference as to a jury trial and all dispositive pretrial motions, requiring the submission of proposed findings of fact and conclusions of law, and allowing the bankruptcy court to continue overseeing discovery and other non-dispositive pretrial matters.  *See British Am. Isle of Venice (BVI) Ltd. et al. v. Fullerton, et al.* (*In re British Am. Ins. Co. Ltd.*), Nos. 12-81329-CIV-COHN [ECF No. 5] & 12-81330-CIV-COHN [ECF No. 6] (Order Granting Motion to Withdraw entered on December 21, 2012) (withdrawing the reference as to a jury trial, for the purposes of issuing any final orders or judgments, and requiring the bankruptcy judge to issue a report and recommendation on all dispositive pretrial motions); *Furr v. Bank of New York Mellon, et al.* (*In re Banyon 1030-32, LLC & Banyon Income Fund, L.P.*), No. 14-60640-CIV-ZLOCH [ECF No. 5] (Order Granting Motion to Withdraw entered on March 28, 2014) (withdrawing the reference as to a jury trial and requiring the bankruptcy judge to issue proposed findings of fact and conclusions of law on all case dispositive motions).

### VI.     Withdrawal of the Reference Would Advance Uniformity in Bankruptcy Administration

Withdrawing the reference as to Providence Fund's Claims against Cadwalader will have no impact on the uniformity of bankruptcy administration because, as noted above, the Providence Fund Claims do not turn on questions of bankruptcy law.  As the Bankruptcy Court has already noted, the "Aiding and Abetting Claim and Accounting Claim . . . were not created by the Bankruptcy Code and could arise outside of the bankruptcy context."  *Yip*, 2018 WL

49444840, at *5.  Moreover, neither the Aiding and Abetting Claim nor the Accounting Claim "invoke[] the substantive rights and powers created by the Bankruptcy Code nor depend[] on the existence of a bankruptcy proceeding for [their] prosecution." *Id.*

Likewise, not only does the true substance of the Turnover Claim "appear[] to be an extension of the . . . Aiding and Abetting Claim and/or a breach of contract claim," it further "appears 'directly connected to the facts undergirding' the Aiding and Abetting Claim, and the Aiding and Abetting Claim will 'rise and fall together' with the Turnover Claim." *Id.* at *6 (citation omitted).

Accordingly, resolution of the Providence Fund Claims against Cadwalader will have no impact on the uniformity of bankruptcy administration.  *See McMahon v. Providence Capitol Enter., Inc.* (*In re McMahon*), 222 B.R. 205, 208 (S.D.N.Y. 1998) (uniformity in administration of bankruptcy law will not be affected where a breach of contract claim "does not turn on questions of bankruptcy law." ); *see also Solutia Inc. v. FMC Corp.*, No. 04 Civ. 2842(WHP), 2004 WL 1661115, at *4 (S.D.N.Y. July 27, 2004) (withdrawing reference where the issues in dispute were "exclusively state law matters" with "no bankruptcy-related issues . . . .").

**VII.    Withdraw of the Reference Will Not Promote Forum Shopping**

Withdrawal of the reference will not promote forum shopping because Cadwalader's demand for a jury trial on all the Providence Fund Claims, coupled with the fact that the Trustee and Cadwalader do not consent to entry of final orders and judgments by the bankruptcy court, make it clear that the District Court is the proper forum.  In short, Cadwalader "has requested withdrawal of the reference from a court that does not have authority to enter a final judgment, to a court that does have such authority." *Scharrer*, 2014 WL 2882522, at *2; *see also Chambers v. Perkins Coie, LLP, et al.* (*In re Mojo Brands Media, LLC*), Nos. 17-mc-36-Orl-41 & 17-mc-37-

Orl-41, 2018 WL 1886557, at *3 (M.D. Fla. Apr. 19, 2018) (agreeing that "there is no concern over forum shopping because regardless of whether its [motion to withdraw the reference] is granted, the district court alone will have the ability to enter a final judgment").

WHEREFORE, Defendant Cadwalader, Wickersham & Taft LLP respectfully requests the entry of an Order: (1) withdrawing the reference with respect to the jury trial on all of Providence Fund's Claims against Cadwalader; (2) withdrawing the reference with respect to rulings on dispositive motions on all Providence Fund's Claims against Cadwalader, requiring the bankruptcy judge to submit proposed findings of fact and conclusions of law on all dispositive pretrial motions; and (3) for all such further relief as is deemed just and proper.

## DESIGNATION OF RECORD PURSUANT TO LOCAL RULE 5011-1

Pursuant to Local Rule 5011-1, Cadwalader designates the following papers that it believes are reasonably necessary and pertinent to the District Court's consideration of this Motion:

1.  ECF No. 3 – Scheduling Order;

2.  ECF No. 7 – Amended Complaint;

3.  ECF No. 10 – Motion to Compel Arbitration and Stay Pending Adversary Proceeding;

4.  ECF No. 11 – Expedited Motion to Stay Proceedings Pending Adjudication of Motion to Compel Arbitration;

5.  ECF No. 22 – Response to Motion to Compel Arbitration;

6.  ECF No. 25 – Expedited Motion for Clarification of Ruling on Expedited Motion to Stay Proceedings Pending Adjudication of Motion to Compel Arbitration;

7.  ECF No. 26 – Response to Motion for Clarification;

8.  ECF No. 28 – Reply to Response to Motion for Clarification;

9.  ECF No. 37 – Transcript of Hearing Re ECF Nos. 10 & 11;

10.    ECF No. 47 – Motion to Strike Portions of Proposed Order;

11.    ECF No. 51 – Order on Joint Motion to Continue Pretrial Conference and Extend All Pretrial Deadlines;

12.    ECF No. 54 – Response to Motion to Strike Portions of Proposed Order;

13.    ECF No. 55 – Order Granting in Part Motion to Compel Arbitration and Stay Pending Adversary Proceeding;

14.    ECF No. 57 – Expedited Motion for Stay Pending Appeal of Order Denying Motion to Compel Arbitration;

15.    ECF No. 58 – Motion for Leave to Appeal Order Granting in Part Motion to Compel Arbitration and Stay Pending Adversary Proceeding;

16.    ECF No. 59 – Notice of Appeal of Order Granting in Part Motion to Compel Arbitration and Stay Pending Adversary Proceeding;

17.    ECF No. 64 – Response in Opposition to Expedited Motion for Stay Pending Appeal of Order Denying Motion to Compel Arbitration; and

18.    ECF No. 66 – Order Granting, In Part, Expedited Motion for Stay Pending Appeal of Order Denying Motion to Compel Arbitration.

Dated:  October 29, 2018.                    Respectfully submitted,

**HOLLAND & KNIGHT LLP**
*Counsel for Cadwalader, Wickersham & Taft LLP*
701 Brickell Avenue, 33rd Floor
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile:  (305) 789-7799
E-mail: jose.casal@hklaw.com
E-mail: joaquin.alemany@hklaw.com
E-mail: robert.davis@hklaw.com

By:  */s/ Jose A. Casal*
      Jose A. Casal
      Florida Bar No. 767522
      Joaquin J. Alemany
      Florida Bar No. 662380
      Robert W. Davis, Jr.
      Florida Bar No. 84953

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 29th day of October, 2018, a true and correct copy of the foregoing was served via electronic transmission on all CM/ECF registered users for this adversary proceeding, as indicated on the service list below:

Joaquin J Alemany on behalf of Defendant Cadwalader, Wickersham & Taft LLP
joaquin.alemany@hklaw.com, jose.casal@hklaw.com

Robert W Davis on behalf of Defendant Cadwalader, Wickersham & Taft LLP
robert.davis@hklaw.com, linda.young@hklaw.com

Ashley J Dillman Bruce on behalf of Plaintiff Maria Yip, as Chapter 7 Trustee
adbruce@bergersingerman.com, efile@bergersingerman.com,
cphillips@bergersingerman.com, efile@ecf.inforuptcy.com

James D Gassenheimer on behalf of Plaintiff Maria Yip, as Chapter 7 Trustee
jgassenheimer@bergersingerman.com, efile@bergersingerman.com,
efile@ecf.inforuptcy.com

Solomon B Genet on behalf of Defendant Greene Espel PLLP
sgenet@melandrussin.com, ltannenbaum@melandrussin.com, mrbnefs@yahoo.com,
sgenet@ecf.courtdrive.com, ltannenbaum@ecf.courtdrive.com,
phornia@ecf.courtdrive.com

Mark A Levy, Esq on behalf of Defendant Grant Thornton LLP
mark.levy@brinkleymorgan.com, sandra.gonzalez@brinkleymorgan.com,
brinkleymorganecf@gmail.com

David H Smith on behalf of Defendant Grant Thornton LLP
hsmith@robbinsrussell.com, jlee@robbinsrussell.com

By: */s/ Jose A. Casal*_____
        Jose A. Casal, Esq.

# CADWALADER

Cadwalader, Wickersham & Taft LLP
700 Sixth Street, N.W., Washington, DC 20001
Tel +1 202 862 2200 Fax +1 202 862 2400
www.cadwalader.com

New York   London   Charlotte   Washington
Houston   Beijing   Hong Kong   Brussels

February 1, 2016

Antonio C. Buzaneli
Providence Global, Inc.
2020 Ponce de Leon Boulevard
Suite 901
Coral Gables, FL 33134

        Re:    Engagement Letter

Dear Mr. Buzaneli:

        Thank you for engaging Cadwalader, Wickersham & Taft LLP, a limited liability partnership under New York law ("Cadwalader" or the "Firm"), to represent **Providence Global, Inc. and Providence Financial Investments, Inc.** (the "Providence Companies"). We believe it is important to share an understanding of the basis on which we will provide professional services to you. The purpose of this letter is to confirm the terms and conditions on which you have engaged us.

## CLIENT

        Cadwalader's engagement is to represent each Providence Company as a separate entity and not any of its parents, subsidiaries or other affiliates, or any of the affiliates' or that Providence Company's individual directors, officers, employees, shareholders or agents. In performing the engagement, however, we will advise and consult with each Providence Company by communicating with its directors, officers, designated partners, members and employees acting in their corporate capacities.

## SCOPE OF ENGAGEMENT

        You have engaged Cadwalader in connection with responding to civil subpoenas issued to the Providence Companies by the U.S. Securities and Exchange Commission. At this point, we have not been engaged to enter an appearance on your behalf in any potentially pending action (civil or otherwise). If you would like the scope of these services to expand, you will so advise us, and we may enter into a modified engagement agreement with you, including with respect to the retainer discussed below.



**Exhibit "A"**

## RESPONSIBILITY AND TEAM MEMBERS

I and my colleague Sophie Cuthbertson will be available to consult on all aspects of your matter. My partners, Ken Wainstein and Joseph Moreno, will be the day-to-day contact partners, and will draw upon the talent and expertise of other attorneys and assign paralegals as appropriate.

## KEEPING YOU INFORMED

We are committed to keeping you informed about our work on the matter. This includes letting you know who is working on the matter, updating you on progress, advising you of any potential problems or delays, and keeping you notified of costs. To this end, we will provide you with a report on the status of the matter as regularly as you require. In the event you need to reach one of our attorneys and the person sought is unavailable, please leave a message describing the nature and urgency of your inquiry. It is our policy to respond to all such inquiries promptly.

## FEES, EXPENSES AND BILLINGS

### Legal Fees

You will be billed on the basis of hourly rates multiplied by the number of hours worked on your matter. The current hourly rates of attorneys expected to work on this matter are:

Gregg S. Jubin: $1,200
Kenneth L. Wainstein: $1,250
Joseph V. Moreno: $935
Sophie K. Cuthbertson: $925
Emily J. Rockwood: $860

From time to time, other attorneys or staff may provide services, and their time will be charged at their applicable hourly rates.

These rates are subject to periodic adjustment. In the case of partners and counsel, adjustment usually occurs in January of each year; in the case of associates, adjustment usually occurs when they step up to the next level of seniority. Hourly billing will be in 10-minute units (six to the hour) for time spent on the matter. These rates do not include any amounts that may be added to a particular invoice for disbursements and charges.

**Disbursements and Charges:** You will be responsible for disbursements and charges incurred in the matter that are beyond our general office-related expenses. Such disbursements and charges may include, but are not limited to, photocopying, facsimiles, long distance telephone calls, hand deliveries, overnight courier services, overtime meals and staff services, overtime car travel services, airline and train travel (economy class unless otherwise approved), computer research and electronic data processing (e.g., scanning/blowbacks, bibliographic coding, hosting and back-up tape restoration/data harvesting). Invoices from third-party vendors



such as expert witnesses, local counsel and other providers exceeding $1,000 may be sent to you for direct payment to such vendors.

**Retainer**: As is our policy, we are requesting an initial retainer of $100,000. This retainer is a partial advance against anticipated fees, disbursements, and charges and is due now.

The retainer will be maintained throughout the duration of the engagement. It will be deposited in the Firm's general account and applied against the last statement that we send to you. Any unused portion of the retainer will be refunded to you upon the conclusion of the matter.

**Billing Arrangements**: Statements of fees, disbursements and charges will be sent to you on a monthly basis, with payment to be made within thirty (30) days of receipt of the invoice. Please note that we reserve the right to impose a late charge at the rate of 9% per annum on past due accounts. If you anticipate that payment will be delayed, please discuss this delay with us at the earliest possible opportunity. If you have any questions regarding an invoice, please contact us so that we may try to answer them promptly.

## COMMUNICATION TECHNOLOGY

As lawyers, we are always mindful of our obligation to safeguard our clients' proprietary, sensitive or otherwise confidential information. To this end it is important that we agree from the outset on what kinds of communication technology will be employed in the course of this engagement. If there are particular forms of communication technology that you do not wish us to use, or if there are other specific safeguards that you would like us to put in place, please advise us promptly. If you do not so advise us, we will assume that you have given your consent to, and accepted any risks attendant upon, the use of any means of communication that we deem to be appropriate (including cell phones, electronic mail and facsimiles.)

## CONFLICTS

Because Cadwalader is a large international general service law firm that may be asked in other matters to represent persons or entities whose interests are adverse to yours, we request advance waivers of conflicts of interests in matters distinct from the matters in which we represent you. Accordingly, in engaging us, you agree that we will not henceforth be precluded from accepting a separate engagement, whether in a business transaction, in litigation, in a bankruptcy or insolvency matter, or otherwise, from any existing or new client, and that you will not seek to disqualify the Firm, provided that: (a) such separate engagement does not involve the same factual and legal matters for which you have retained us or may hereafter retain us; (b) in representing such other persons or entities, we will not disclose any of the proprietary, sensitive or otherwise confidential information that we obtained in representing you; and (c) such engagement is not otherwise prohibited by law.

-3-

## THE FIRM'S ATTORNEY-CLIENT PRIVILEGE

In recent years, several courts have said that when a firm reviews its compliance with professional conduct rules or other law in the representation of a client, the firm may not be able to claim the attorney-client privilege for its review unless the firm withdraws from representing the particular client before conducting the review or the client agrees that the firm can assert privilege for any such review. We are ordinarily reluctant to withdraw before conducting a review because withdrawal, even when permitted under the rules, could be harmful to our clients. We are also reluctant to decline new representations that our clients wish us to take on. Therefore, since a client's agreement that we can assert privilege for a review may avoid the need to withdraw or, as the case may be, to decline a new representation, we believe it is in the interest of our clients to agree that the Firm have the protection of the privilege in connection with internal reviews of its work for you.

Accordingly, you agree that any communications between our lawyers and staff working on your matters and the lawyers at or on behalf of the Firm who may be reviewing that work for compliance with professional conduct rules or other law will be protected by the Firm's own attorney-client privilege or work-product immunity and that any such review will not constitute a conflict between our interests and your interests. This agreement pertains to any existing and future disputes between us and/or our affiliates; for any such dispute the Firm's own privileges and immunities are preserved and not waived.

## FILES

Generally, we keep clients' files for 10 years after the conclusion of a matter. After 10 years, we reserve the right to destroy such files. If you wish Cadwalader to retain your files for a longer time or if you wish to take possession of your files or have them transferred to a third party, you must notify us in writing. If you wish to take possession of your files or have them transferred to a third party, we reserve the right to charge you the reasonable costs of the preparation and delivery of your files.

## SUBPOENAS AND OTHER DEMANDS FOR FILES

If the Firm is required to respond to a subpoena or other demand seeking production of files relating to services that the Firm performed for you, or if the Firm is required to testify by deposition or otherwise concerning such services, we will consult with you as to whether you wish us to supply the information requested or to assert the attorney-client privilege. To the extent permitted under ethical guidelines, by engaging the Firm you agree to pay the Firm for the charges incurred in responding to such subpoena or other demand and/or providing advice, if appropriate, without regard to whether the Firm is otherwise representing you at the time the subpoena or other demand is served. Such charges may include, without limitation, the time and expense we incur in searching for documents (both hard copy and electronic), photocopying costs, review of documents, preparation of objections, appearance at depositions or hearings, or other responses to issues raised by such subpoenas or demands.

-4- 

## QUESTIONS AND TERMINATION

Cadwalader has procedures to address any issue that you would like to raise, and we encourage you to inform us if at any time our services do not meet your expectations. We will strive to address any problem promptly and in a professional manner.

You may end this relationship at any time by giving us written notice. However, termination will not diminish or extinguish your obligation to pay us subject to the terms of this agreement. We, in turn, may withdraw from the representation upon written notice where withdrawal is permissible or required under rules of professional conduct.

## RESOLUTION OF DISPUTES – MEDIATION AND ARBITRATION

Although we do not expect that differences will arise between us, as lawyers we recognize that disagreements can happen and it is therefore wise to agree upon a procedure for resolving them fairly and expeditiously. Accordingly, any dispute arising out of or relating to our rendering professional services to you or our fees, disbursements and charges will first be submitted to private, confidential non-binding mediation with a mediator jointly selected by you and the Firm, or failing a joint selection with a mediator selected by the New York office of JAMS.

If resolution through mediation is not achieved, any such dispute will be finally resolved by private, confidential binding arbitration. If the New York Fee Dispute Resolution Program (Part 137 of 22 NYCRR) applies, the arbitration will be conducted in accordance with that Program (copy available upon request). Otherwise, the arbitration will be conducted in New York City in accordance with the procedures in this letter and the CPR Institute Rules for Non-Administered Arbitration ("Rules") in effect on the date of this letter, or such other rules and procedures as the parties may agree. In the event of a conflict between the Rules and the provisions of this letter, the latter will control. The arbitration will be conducted before a panel of three arbitrators of whom each party shall select one, and the third shall be selected by the two party selected arbitrators. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation or enforceability of any of these procedures shall be governed by the Federal Arbitration Act and resolved by the arbitrators. Discovery shall be permitted only to the extent expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery. The arbitration panel shall have no power to award non-monetary or equitable relief or to award damages in the nature of punitive, exemplary, statutory, consequential or other damages in excess of compensatory damages. The arbitrators shall issue a final award in writing as promptly as practicable which shall be binding on each of us. Judgment on an award may be entered in any court having jurisdiction. All information concerning the fact, substance or result of the arbitration shall remain confidential and not disclosed except to the extent necessary to enforce the award or as otherwise required by law. The arbitrators' fees and expenses shall be borne equally by the parties. Each party shall bear the fees and expenses of its counsel.

-5-



## ENTIRE AGREEMENT

This letter represents the entire agreement between us concerning the terms and conditions of this engagement. By signing below, you acknowledge that this letter has been reviewed and understood and that you agree to be bound by its terms and conditions. No change or waiver of any of the provisions of this letter will be binding on either you or Cadwalader unless the change is in writing and signed by both you and us. If you are in agreement with the foregoing terms and conditions, would you please sign and return the enclosed copy of this letter to us.

Once again, we thank you for engaging Cadwalader to handle this matter. We very much look forward to working with you.

Sincerely,

Gregg S. Jubin

A G R E E D:

Providence Global, Inc.
Providence Financial Investments, Inc.

By: _____
Antonio C. Buzaneli

Date: _____

USActive 34015731.1

 **United States Securities and Exchange Commission**

Chicago Regional Office
175 W. Jackson Blvd., Ste. 900
Chicago, IL 60604

ANDREW P. O'BRIEN
Senior Counsel
Division of Enforcement

(312) 886-3215
obriena@sec.gov

January 13, 2016

## VIA UPS OVERNIGHT DELIVERY

Providence Companies
Attn: General Counsel or Chief Compliance Officer
2020 Ponce de Leon Boulevard
Suite 901
Coral Gables, Florida 33134

To Whom It May Concern:

We believe that Providence Companies (including any person or entity falling under the definition of "Providence" in the Rider to the Subpoena accompanying this letter) may possess documents and data that are relevant to an ongoing investigation being conducted by the staff of the United States Securities and Exchange Commission. Accordingly, we hereby provide notice that such evidence should be reasonably preserved and retained until further notice. Failure to do so could give rise to civil and criminal liability.

The Commission considers potentially relevant documents to include those created on or after January 1, 2011 that:

(1)  were created, modified or accessed by any of the following individuals: Jeffory Churchfield, Antonio Buzaneli, Jose Ordonez, Michael A. Hubbard, Peter Klinge, Jr., Jeffrey Watts, Alexander Branning, Jack Jarrell, Curtis May, Martha Chavez, Juan Chavez, Lazka Garrido, Victoria Stienstra, Felix Gutierrez, Helena Yumi, and/or Julio Rivera; or

(2)  relates or refers in any way to any of the following transactions/topics:
    (a)  agreements with Jeffory Churchfield;

Exhibit "B"

 Providence Companies
**January 13, 2016**
Page 2

    (b)    Promissory Notes between Providence (as defined in the
             Rider to the Subpoena accompanying this letter) as Borrower
             and any other person or entity as Lender;
    (c)    the Providence Fixed Income Fund

Such documents include both "hard copy" versions and electronically-stored information in your possession, custody or control, including text files, data compilations, word processing documents, spreadsheets, e-mail, voicemail, data bases, calendars and scheduling information, logs, file fragments and backup files, letters, instant messages, memoranda, notes, drawings, designs, correspondence or communication of any kind. Evidence that is stored electronically may be maintained on shared network files, computer hard drives, servers, DVDs, CD-ROMs, flash drives, thumb drives, laptops, digital recorders, netbooks, PDAs, smartphones, or other handheld devices.

In this letter, I refer to such documents and data as "Evidence." <u>You have a duty to reasonably preserve and retain such Evidence.</u>

<u>This duty includes an obligation to provide notice</u> to all employees or custodians who may be in possession of Evidence. This duty also extends to the preservation and retention of Evidence in the possession or custody of third-parties, such as an internet service provider or a cloud computing provider, if such Evidence is within your control.

<u>You may need to act affirmatively to prevent the destruction of Evidence.</u> This duty may necessitate quarantining certain Evidence to avoid its destruction or alteration. You should consider whether you need to discontinue the routine destruction of Evidence, including discontinuing the recycling of backup tapes or other storage media, and the deletion of emails, "trash," "recycling," "drafts," "sent," or "archived" folders. You should avoid running or installing any drive cleaning, wiping, encrypting, or defragmenting software on hard disks of computers that may contain Evidence.

<u>You should consider preserving any forensically recoverable data by having mirror image copies made of the Evidence.</u> Having said that, any attempt to replicate electronic data without adhering to best practices for data replication could compromise the integrity or contents of such data. Simply making "hard copies" of such Evidence or transforming it to other formats (such as TIFF, or PDF documents) does not constitute preservation of such Evidence. We are prepared to discuss with you proper protocols for replication before you attempt to copy Evidence. The Commission may be able to retain and supervise computer forensic resources to properly and non-invasively create back-up images of Evidence.



Providence Companies
**January 13, 2016**
Page 3

In addition to preserving the Evidence described above, we further request that you take no action to delete or otherwise compromise <u>any</u> content existing on social networking websites such as "Facebook" or "LinkedIn." Moreover, we request that you take no affirmative action to delete <u>any</u> emails, even emails that may not fit within the parameters set forth above.

*    *    *

While we recognize that this may impose a burden on you, it is absolutely necessary that you fully comply with your obligations to reasonably retain and preserve Evidence. We appreciate your efforts in this regard.

Please contact me if you have any questions, or to meet-and-confer about the matters discussed above. Further, please acknowledge your receipt of this letter by sending me an email or by returning a copy of this letter with your signature in the space provided below.

Sincerely,

Andrew P. O'Brien

I acknowledge that I received this letter
on the __ day of _____, 2016:

_____



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of Providence Financial (C-8263)**

To:     Providence Companies
        Attn: General Counsel or Chief Compliance Officer
        2020 Ponce de Leon Boulevard
        Suite 901
        Coral Gables, Florida  33134

☒     **YOU MUST PRODUCE** everything specified in the Rider to this subpoena to officers of the
        Securities and Exchange Commission, at the place, date and time specified below:

        ENF-CPU, U.S. Securities and Exchange Commission, 100 F St., N.E., Mailstop 5973,
        Washington, DC 20549-5973, no later than **February 5, 2016 at 9:30 a.m.**

            With a copy to:

        Andrew P. O'Brien, U.S. Securities and Exchange Commission, Chicago Regional
        Office, 175 W. Jackson Blvd., Suite 900, Chicago, Illinois 60604, no later than **February
        5, 2016 at 9:30 a.m.**

☐     **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place,
        date and time specified below:

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: _____          Date: ___1/13/2016___

        Andrew P. O'Brien, Senior Counsel
        U.S. Securities and Exchange Commission
        175 W. Jackson Blvd., Ste. 900
        Chicago, Illinois  60604

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this
matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation
under: Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:          If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA RIDER FOR:**
**Providence Companies**
**January 13, 2016**
In the Matter of Providence Financial (C-8263)

## A.   Definitions

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.   "Providence" means Providence Global, Inc. and all members of the Providence Family of Companies identified on the Providence Financial website at http://provfinance.com/about-providence including, but not limited to Providence Financial Investments, Inc., the Providence Companies, Providence Companies Group, Providence Preferred, Providence Trading, Providence Finance & International Trade, Providence Investment Management International Limited, Providence Financial, Providence Entertainment & Media, Providence Capital Ventures LLC, Providence Health Corp, Providence Realty Advisors, Providence Fomento, and Providence Travel and including their parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.   "Jeffory Churchfield" means the individual named Jeffory Churchfield who is a resident of Minnesota and with whom Providence Global, Inc. has entered into a Mutual Nondisclosure, Non-Circumventino and Referral Fee Agreement as well as his employees, agents, representatives, or any other person acting or purporting to act on his behalf.

3.   "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

4.   A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

5.   "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices,

1

instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

6.   "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

7.   "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

8.   The terms "You" and "Your" means the Person or entity to whom this subpoena was issued.

9.   To the extent necessary to bring within the scope of this subpoena any information or Documents that might otherwise be construed to be outside its scope:

   a.   the word "or" means "and/or";
   b.   the word "and" means "and/or";
   c.   the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
   d.   the masculine gender includes the female gender and the female gender includes the masculine gender; and
   e.   the singular includes the plural and the plural includes the singular.

## B.   Instructions

1.   Unless otherwise specified, the subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All electronic Documents responsive to the Document subpoena, including all

metadata, should also be produced in their native software format.

2.    For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you must secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.    Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.    In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.    Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the Document boundaries.

6.    Documents should be labeled with sequential numbering (bates-stamped).

7.    **You must produce all Documents created during, or Concerning, the period January 1, 2011 to the present, unless otherwise specified.**

8.    The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.    This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege –

you do not produce something called for by the request, you should submit a list of what it is not producing. The list should describe each item separately, noting:

a.    its author(s);

b.    its date;

c.    its subject matter;

d.    the name of the Person who has the item now, or the last Person known to have it;

e.    the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;

f.    the basis upon which you are not producing the responsive Document;

g.    the specific request in the subpoena to which the Document relates;

h.    the attorney(s) and the client(s) involved; and

i.    in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

10.    If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## C.    Documents to be Produced

1.    Documents sufficient to disclose Providence's corporate structure.

2.    Documents sufficient to identify all officers, directors, principals, owners, shareholders, employees, and all others acting on behalf of Providence and Documents sufficient to disclose, for each individual identified in response to this item:

a.  Title;

b.  Dates of affiliation with Providence;

c.  Current or last known home address and telephone number;

d.  Current or last known employment address and telephone number; and

e.  Salary or other compensation for each year from 2011 to the present.

3.    All Communications between Providence and Jeffory Churchfield.

4.    All Documents Concerning agreements between Providence and Jeffory Churchfield.

5.    Documents sufficient to identify and quantify each and every payment that Providence has made to Jeffory Churchfield.

6.     All Documents Providence has provided to Jeffory Churchfield Concerning Providence's investment products and/or opportunities.

7.     All Documents Concerning Promissory Notes between Providence as Borrower and any other Person or Persons as Lender.

8.     All registers of Lenders created and/or maintained Concerning the Promissory Notes described in item 7 above.

9.     For each Lender identified in response to item 8 above, Documents sufficient to disclose:

     a.   The amount of the loan or loans;

     b.   The date of the loan or loans; and

     c.   Whether, when, and how much of the Lender's principal has been returned to the Lender.

10.    With respect to each Lender identified in Item 8 above, all Documents Concerning agreements or contracts between Providence and the Lender and all Documents Concerning the terms of the Lender's loans and/or investments to or with Providence.

11.    All prospectuses or offering materials Concerning the Promissory Notes described in item 7 above.

12.    All Communications between Providence and any Lender or Lenders Concerning the Promissory Notes described in item 7 above including, but not limited to, all periodic or other account statements.

13.    All Documents Concerning the use of the funds obtained by Providence in connection with the Promissory Notes described in item 7 above and the current location of such funds.

14.    Documents sufficient to identify all individuals or entities that were solicited as potential investors in the Promissory Notes described in item 7 above but did not ultimately invest in those Promissory Notes.

15.    All audit reports Concerning the Promissory Notes described in item 7 above.

16.    Documents sufficient to identify all Persons that have provided bookkeeping, accounting, or tax services to Providence and, for each Person identified in response to this item:

     a.   Name;

     b.   Dates of affiliation with Providence;

     c.   Current or last known address and telephone number;

     d.   All Documents Concerning agreements with such Person.

17.    All accounting and financial records including, but not limited to, general ledgers, subsidiary ledgers, journals, financial statements, income statements, cash flow statements, and balance sheets.

18.   All tax returns and related schedules.

19.   Documents sufficient to identify all Persons other than Lenders who have received payments, fees, or compensation of any kind from Providence (including but not limited to referral fees) Concerning the Promissory Notes described in item 7 above.

20.   For each Person identified in response to item 19 above:

   a.   Name;

   b.   Current or last known address and telephone number;

   c.   Amount of payments, fees, or other compensation paid to such Person.

21.   Documents sufficient to identify all accounts at financial institutions (all foreign and domestic bank and brokerage accounts) over which Providence has direct or indirect control and/or in which you have a direct or indirect beneficial interest.

22.   For each account identified in response to item 21 above:

   a.   Account number;

   b.   Name and address of financial institution;

   c.   Identity of account holder.

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides as follows:

[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the
Government of the United States, knowingly and willfully--

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
(2) makes any materially false, fictitious, or fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing the same to contain any materially false,
fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years . . . or both.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to
   the Commission employee taking your testimony, who will determine whether to grant your request. The reporter
   will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your
   counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your
   testimony to clarify any of the answers you give during testimony; and make summary notes during your
   testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the
testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned
once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation.
This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be
adverse to another's. If you are represented by counsel who also represents other persons involved in the
investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning
possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

A person who has submitted documentary evidence or testimony in a formal investigative proceeding
shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of
his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal
investigative proceeding the Commission may for good cause deny such request. In any event, any
witness, upon proper identification, shall have the right to inspect the official transcript of the witness'
own testimony. .

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the
appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

Whoever--
(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of
the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify
truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true,
willfully and contrary to such oath states or subscribes any material matter which he does not believe to
be true; or

> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
>
> is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

5. *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6. *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

3

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

4

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



## U.S. Securities and Exchange Commission

## Data Delivery Standards

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC). ***Any proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.***

General Instructions .................................................................................................................................................1

Delivery Formats......................................................................................................................................................2

   I.   *Concordance*® Imaged Productions...................................................................................................................2

      1.  Images ...........................................................................................................................................................2

      2.  *Concordance Image*® or Opticon Cross-Reference File...........................................................................2

      3.  *Concordance*® Data File............................................................................................................................3

      4.  Text ..............................................................................................................................................................3

      5.  Linked Native Files .....................................................................................................................................3

  II.   Native File Productions without loadfiles......................................................................................................3

  III.  Adobe PDF File Productions...........................................................................................................................3

  IV.  Audio Files ......................................................................................................................................................4

  V.   Video Files........................................................................................................................................................4

  VI.  Electronic Trade and Bank Records ...............................................................................................................4

  VII.  Electronic Phone Records................................................................................................................................4

### General Instructions

Electronic files must be produced in their native format, i.e., the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note: An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the SEC.

Rev 10/2014

U.S. Securities and Exchange Commission
Data Delivery Standards

General requirements for **ALL** document productions are:

1. A cover letter should be included with each production and include the following:
   a. A list of each piece of media included in the production with its unique production volume number
   b. A list of custodians, identifying the Bates range for each custodian.
   c. The time zone in which the emails were standardized during conversion.
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate text files.
7. All load-ready collections should account for custodians in the custodian field.
8. Audio files should be separated from data files if both are included in the production.
9. Only alphanumeric characters and the underscore character are permitted in file names and **folder names**. Special characters are not permitted.
10. All data productions must be produced using industry standard self-extracting encryption software.
11. Passwords for documents, files, compressed archives and encrypted media must be provided separately either via email or in a separate cover letter from the media.
12. All productions should be produced free of computer viruses.
13. Additional technical descriptions can be found in the addendum to this document.

*Please note that productions that come via United States Postal Service are subject to Mail Irradiation, as a result electronic productions may be damaged.*

**Delivery Formats**

I. *Concordance®* Imaged Productions
The SEC prefers that all documents and data be produced in a structured format prepared for Concordance. All scanned paper electronic file collections should be converted to TIFF files, Bates numbered, and include fully searchable text files.

1. Images
   a. Black and white images must be 300 DPI Group IV single-page TIFF files.
   b. Color images must be produced in JPEG format.
   b. File names cannot contain embedded spaces or special characters (including the comma).
   c. Folder names cannot contain embedded spaces or special characters (including the comma).
   d. All TIFF image files must have a unique file name, i.e. Bates number.
   e. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
   f. The number of TIFF files per folder should not exceed 500 files.
   g. Excel spreadsheets should have a placeholder image named by the Bates number of the file.
   h. AUTOCAD/photograph files should be produced as a single page JPEG file.

2

2. **Concordance Image® OR Opticon Cross-Reference File**

The image cross-reference file to link the images to the database should be a comma- delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,Pag*

3. *Concordance®* **Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

a. The first line of the .DAT file must be a header row identifying the field names.
b. The .DAT file must use the following *Concordance®* default delimiters:
   Comma ¶ ASCII character (020)
   Quote þ ASCII character (254)
c. Date fields should be provided in the format: mm/dd/yyyy
d. Date and time fields must be two separate fields.
e. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.
f. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
g. For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media.
h. BEGATT and ENDATT fields must be two separate fields.
i. A complete list of metadata fields is available in **Addendum A** to this document.

4. **Text**

Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. We require document level ANSI text files, named per the FIRSTBATES/Image Key. (Please note in the cover letter if any non-ANSI text files are included in the production.) Extracted text must be in a separate folder, one text file per document. The number of files per folder should not exceed 500 files. There should be no special characters (including commas in the folder names). For redacted documents, provide the full text for the redacted version.

5. **Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.

a. Native file documents must be named per the FIRSTBATES number.
b. The full path of the native file must be provided in the .DAT file for the LINK field.
c. The number of native files per folder should not exceed 500 files.

II. **Native File Production without Loadfiles**

With prior approval, native files may be produced without loadfiles. The files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format. A separate folder should be provided for each custodian.

III. **Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
2. All PDFs must be unitized at the document level, i.e., each PDF should represent a discrete document.
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

Rev 10/2014

U.S. Securities and Exchange Commission
Data Delivery Standards

**IV.  Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:             Caller's name or account/identification number
2) Originating Number:      Caller's phone number
3) Called Party Name:       Called party's name
4) Terminating Number:      Called party's phone number
5) Date:                    Date of call
6) Time:                    Time of call
7) Filename:                Filename of audio file

**V.  Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.  Electronic Trade and Bank Records**

When producing electronic trade and bank records, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.  Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).

   a. The metadata that must be included is outline in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

Rev 10/2014

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated<br>for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent<br>document to the Bates number of the last page of the<br>last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated<br>in each record representing an attachment "child"<br>document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be<br>more than one Bates number listed depending on the<br>number of attachments<br>**The CHILD_BATES field should be populated in<br>each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email:  mailbox where the email resided<br>Native: Individual from whom the document<br>originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple<br>entries |
| TO | Coffman, Janice; LeeW<br>[mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple<br>entries |
| CC | Frank Thompson [mailto:<br>frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple<br>entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple<br>entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME<br>_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which<br>the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be<br>combined with the DATE_SENT field; |
| TIME_ZONE | GMT | The time zone in which the emails were standardized<br>during conversion.<br>Email: Time zone<br>Native: (empty) |

5

U.S. Securities and Exchange Commission
Data Delivery Standards

| LINK | D:\001\EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
|---|---|---|
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c2fcab58712467eab4004583eb8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Loadfile:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000003.TIF,Y,,,
IMG0000005,,E:\001\IMG0000003.TIF,Y,,,
IMG0000006,,E:\001\IMG0000003.TIF,,,,
```

6

U.S. Securities and Exchange Commission
Data Delivery Standards

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable


For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

7



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Chicago Regional Office
175 West Jackson Blvd., Suite 900
Chicago, Illinois 60604

**DIVISION OF ENFORCEMENT**

Andrew P. O'Brien
Senior Counsel
312.886.3215

January 13, 2016

**VIA UPS**

Providence Companies
Attn: General Counsel or Chief Compliance Officer
2020 Ponce de Leon Boulevard
Suite 901
Coral Gables, Florida 33134

      Re:    In the Matter of Providence Financial (C-8263)

To Whom It May Concern:

The staff of the Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to you as part of this investigation. The subpoena requires you to give us documents.

Please read the subpoena and this letter carefully. This letter answers some questions you may have about the subpoena. You should also read the enclosed SEC Form 1662. You must comply with the subpoena. You may be subject to a fine and/or imprisonment if you do not.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires you to give us the documents described in the attachment to the subpoena. You must provide these documents by **February 5, 2016**. The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

Please note that if copies of a document differ in any way, they are considered separate documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you prefer, you may send us photocopies of the originals. The Commission cannot reimburse you for the copying costs. The copies must be identical to the originals, including even faint marks or print. If you choose to send copies, you <u>must</u> keep the originals in a safe

Providence Companies
January 13, 2016
Page 2

place. The staff will accept the copies for now, but may require you to produce the originals later.

If you <u>do</u> send us photocopies, please put an identifying notation on each page of each document to indicate that it was produced by you, and number the pages of all the documents submitted. (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number do not conceal any writing or marking on the document. If you send us originals, please <u>do</u> <u>not</u> add any identifying notations.

Copies of documents and information provided in electronic formats must comply with the technical requirements set out in the attached copy of the SEC's Data Delivery Standards. You should contact me prior to production in an electronic format other than those identified in the Data Delivery Standards.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send. The list should state which paragraph(s) in the subpoena attachment each item responds to.

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send <u>all</u> the materials described in it. If, for any reason -- including a claim of attorney-client privilege -- you do not produce something called for by the subpoena, you should submit a list of what you are not producing. The list should describe each item separately, noting:

- its author(s);
- its date;
- its subject matter;
- the name of the person who has the item now, or the last person known to have it;
- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents; and
- the reason you did not produce the item.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should also identify the attorney and client involved.

Providence Companies
January 13, 2016
Page 3

*Where should I send the materials?*

Please send the materials to:
ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

With a copy to:
Andrew P. O'Brien
U.S. Securities and Exchange Commission
Chicago Regional Office
175 W. Jackson Blvd., Suite 900
Chicago, Illinois 60604

## Other Important Information

*May I have a lawyer help me respond to the subpoena?*

Yes. You have the right to consult with and be represented by your own lawyer in this matter. We cannot give you legal advice.

*What will the Commission do with the materials I send?*

The enclosed SEC Form 1662 includes a List of Routine Uses of information provided to the Commission. This form has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation and the subpoena do not mean that we have concluded that you or anyone else has broken the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

Providence Companies
January 13, 2016
Page 4

*I have read this letter, the subpoena, and the SEC Form1662, but I still have questions. What should I do?*

If you have any other questions, you may call me at 312.886.3215 or email me at obriena@sec.gov. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Andrew P. O'Brien
Senior Counsel, Division of Enforcement

Enclosures:   Subpoena
              SEC Form 1662
              Data Delivery Standards
              Document Preservation Letter

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ADMINISTRATIVE ORDER 2012-25

IN THE MATTER OF
BANKRUPTCY PROCEEDINGS

_____/

FILED by _____ D.C.

MAR 27 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

ORDER OF REFERENCE

Pursuant to 28 U.S.C. Section 157(a) any and all cases under title 11 and any and all

proceedings arising under title 11 or arising in or related to a case under title 11 are referred to

the bankruptcy judges of this district.

If a bankruptcy judge or district judge determines that entry of a final order or judgment

by a bankruptcy judge would not be consistent with Article III of the United States Constitution

in a particular proceeding referred under this order and determined to be a core matter, the

bankruptcy judge shall, unless otherwise ordered by the district court, hear the proceeding and

submit proposed findings of fact and conclusions of law to the district court made in compliance

with Fed. R. Civ. P. 52(a)(1) in the form of findings of fact and conclusions stated on the record

or in an opinion or memorandum of decision.

The district court may treat any order of the bankruptcy court as proposed findings of fact

and conclusions of law in the event that the district court concludes that the bankruptcy judge

could not have entered a final order or judgment consistent with Article III of the United States

Constitution.

This Order of Reference amends and supersedes the Order of Reference entered by this

Court on July 11, 1984, 84-12-Civ-Misc.

**DONE AND ORDERED** in Chambers in Miami, Florida this 21 day of March, 2012.

FEDERICO A. MORENO
CHIEF U.S. DISTRICT JUDGE

**Exhibit "C"**

Copies Provided:

All Southern District and Magistrate Judges
All Southern District Bankruptcy Judges
Steven Larimore, Clerk of Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

PROVIDENCE FINANCIAL
INVESTMENTS, INC.,
PROVIDENCE FIXED INCOME
FUND, LLC,

      Debtors.

_____/

MARIA YIP, as Trustee of Providence
Financial Investments, Inc. and Providence
Fixed Income Fund, LLC,

      Plaintiff,

v.

GRANT THORNTON LLP, CADWALADER
WICKERSHAM & TAFT LLP, & GREENE
ESPEL PLLP,

      Defendants.

_____/

Case No.:  16-bk-20516-AJC
Chapter 7
Case No.:  16-bk-20517-AJC
Chapter 7

(Jointly Administered under Case No.:
16-bk-20516-AJC)

**Adv. Pro. No.:  18-ap-01289-AJC**

### AFFIDAVIT OF ANITA MORRISSEY IN SUPPORT OF DEFENDANT CADWALADER, WICKERSHAM & TAFT LLP'S MOTION TO COMPEL ARBITRATION AND STAY PENDING ADVERSARY PROCEEDING

STATE OF NEW YORK
COUNTY OF NEW YORK

      Before me, the undersigned authority, Anita Morrissey, Billing Manager at Cadwalader, Wickersham & Taft LLP ("Cadwalader"), personally appeared, who first being duly sworn, deposes and says under penalty of perjury as being true and correct based on her personal knowledge, information, and belief:

      1.    My name is Anita Morrissey, and I am the Billing Manager for Cadwalader. I am over the age of 18 years, and I make this affidavit on behalf of Cadwalader in support of

**Exhibit "D"**

Cadwalader's Motion to Compel Arbitration and Stay Pending Adversary Proceeding filed in this case (the "Motion").

2.      I have reviewed the books and records (collectively, the "Business Records") maintained by Cadwalader regarding whether any payments were received by Cadwalader from the above captioned debtors, Providence Financial Investments, Inc. and Providence Fixed Income Fund, LLC (collectively the "Debtors") and whether Cadwalader is retaining or holding any property of the Debtors. Cadwalader keeps these Business Records, including ledgers, books of account, computer printouts, receipts and all other papers available to Cadwalader reflecting payments, retainers, or other funds received from Cadwalader's clients, as well as any funds held by Cadwalader. These Business Records are made at or near the time of activity reflected in the record and from information transmitted by persons with personal knowledge of the facts.

3.      These Business Records are regularly maintained in the course of the Cadwalader's business, and it is the regular practice of Cadwalader to make and maintain these Business Records. I maintain these Business Records for Cadwalader and regularly use and rely upon them in the performance of my duties.

4.      I have regular access to the Business Records and supervise others in Cadwalader's Accounting Department who are responsible for generating and maintaining such Business Records, and I am authorized to execute this Affidavit pursuant to lawful corporate authority.

5.      Based upon my review of the Business Records, Cadwalader has never received any fee retainers or payments of attorneys' fees from either of the Debtors.

6.      Based upon my review of the Business Records, any payments received from *non-debtor* affiliates of the Debtors were applied in partial satisfaction of the legal fees and costs

2

incurred with respect to the engagement letter dated February 1, 2016 among Cadwalader, Providence Global, Inc. and Providence Financial Investments, Inc.

7.    Based upon my review of the Business Records, no other payments have been received by any affiliate of the Debtor with respect to any Cadwalader representation.

8.    Additionally, based upon my review of the Business Records, Cadwalader has not retained nor is it holding any property of the Debtors or any affiliate of the Debtor.

FURTHER AFFIANT SAYETH NAUGHT.

CADWALADER WICKERSHAM & TAFT LLP

By: _Anita Morrissey_

Anita Morrissey
Billing Manager, Cadwalader, Wickersham & Taft LLP

STATE OF NEW YORK
COUNTY OF NEW YORK

The foregoing instrument was sworn to and subscribed before me this 30th day of August, 2018, by Anita Morrissey, who is personally known to me.

_Neil A. Ellman_

Notary Public

#60207139_v3

NEIL A. ELLMAN
Notary Public, State of New York
No. 41-4661078
Qualified in Queens County
Certificate filed in New York County
Commission Expires 2/28/22

3